24-1882 Eastern Arkansas Marcus Evans v. Lornetta Smith et al. Mr. Middlebrooks, if you're ready, please proceed. Good morning, judges. Andrew Middlebrooks for the Arkansas Attorney General's Office, representing Talicia Mothershed, Marquis Taylor, and Lornetta Smith. I think it was not clearly established on April 9th, 2019, that failing to remove Mr. Evans' leg restraints was a violation of his constitutional rights. I think that both parties agree there are only two cases that could potentially clearly establish that, which are Walker v. Bowersox and Jackson v. Gutzmer. Both cases involve significantly higher levels of restraint, and in both cases the officers either placed or authorized the placement of the prisoner in restraints in the first instance. Do you agree there's no penological interest involved in this case, that the state is not asserting that there could be in this case? No, Your Honor, the only real fact in dispute was whether it was accidental or intentional. And that's clearly disputed by the facts. That's correct, Judge, and that obviously goes to be resolved in Mr. Evans' favor. So it was either deliberate or accidental here? That's correct. Okay. I don't think there's any robust consensus of authority from other jurisdictions that would clearly establish it at this time, and the issue that... But the lack of like a legitimate prison interest in conduct is relevant to a clearly established analysis, don't you think? You may think it, you may disagree with that, but you may think that, you know, that's not clearly established. But do you agree with that principle that when we talk about clearly established rights, one of the issues at play is whether or not, you know, there's a legitimate purpose for the conduct that was undertaken? Your Honor, I think that that goes to whether or not it was done in good faith, you know, for a legitimate penological purpose. But don't we have to assume here that it wasn't because there's a factual dispute? I do think that we have to assume that it was not. But the issue is that whenever the restraints were initially applied to Mr. Evans, it was for him to attend a prison program. There's no dispute that he, you know, had to be in those leg restraints. He's not disputing that they were... Well, that's not the issue. The issue is how long he was in there. Fifteen hours, I mean, way past whatever initial legitimate reason there was. I agree with that, Judge. But the other issue is, as all of you know, qualified immunity is a two-pronged analysis. There's whether or not there was a constitutional violation and whether or not it was clearly established. I think that the issue, as far as clearly established goes, is that for Walker and Jackson, both of those cases involved the officer being the one that was charged with excessive force being the one who applied the restraints or authorized the application of the restraints, which is different here. If you were to imagine... Is this like an action distinction here between the act of putting the restraints on is different? Is it different in what context from failing to move them once they're applied? Well, I think if you were to imagine this case with any other potential harm to Mr. Evans in the cell, they take him to the cell, put him in there, and another guard is in there and starts attacking him. They wouldn't have engaged in excessive force. That would be a, you know, failure to protect. If they took him to a cell and a cell caught on fire and they left him in there... The allegation here is they took him to the cell, he asked them to take the shackles off, and they said, I forget the language, but it... Something like, no, I told you I was going to get you. And you think because that that just cannot be a constitutional violation for those two officers at that point because... No. I want to be clear. I think that it is a very well-pleaded failure to protect or deliberate indifference case, which I addressed in my initial summary judgment motion. This is solely about whether or not it constitutes excessive force. So I think that is a slight distinction. But also, I'd just like to point out, again, in Walker and Jackson, what this court was saying was excessive force was the application or authorization of these more restrictive restraints, which it... There was no application of the restraints by the defendants in this case. It was a failure to remove them. So I don't know that clearly establishes it so that any reasonable officer would know that that violates Mr. Evans' Eighth Amendment rights. I've also challenged whether or not he has adequately proved any kind of discernible injury or an actual injury. If you look at the facts of the case, the only evidence that there was an injury was that he rated his pain at a 10 out of 10. All the other factors seem to indicate that he was not actually injured. He walked to the infirmary. He was without any assistance. He didn't have any grimacing, complaining, or... How severe must an injury be for it to... I think it had... I mean, the case law seems pretty clear that it has to be at least above a de minimis injury. It has to be an actual injury. What's the best case you have that shows that this is de minimis, the closest case? Your Honor, I don't really have a case on point. I think that... Because when the officer came in, right, I forget the fourth officer who realized this was a problem, immediately documented the situation, took him to the infirmary, and he was prescribed over-the-counter medication at that point. He self-reported pain. Was there any sort of physical evidence? There was some swelling, wasn't there? Some redness? Or is that in dispute? There was... The health care provider, who is not an ADC employee, noted that there was no edema, no swelling, no marks, no indentations. He didn't grimace, wince, or complain when he was examined. He walked there on his own power, and then he never complained about this again. So it seems that at best he has a de minimis injury. It seems that he may have no injury whatsoever. And the shackles were able to fit over articles of clothing, over socks. One of them was pulled up higher than the other, so they were able to move around. They weren't restricting blood flow, as he alleges. And what was the evidence about him cutting his pants or something in order to be able to accommodate the shackles? There's a certain amount of time for inmates in restrictive housing to be able to shower, where they turn on the water so they can't flood the cells. And he cut off his clothes so that he could take a shower. Well, your first argument, as you began, as I understand what you're saying, is that even if we would say or could say there was a constitutional violation, it was not clearly established. That's correct, Judge. That's what I'm trying to argue. I don't think that Walker and Jackson clearly established it to the point that any reasonable officer would understand in this circumstance that it was a violation of his constitutional rights. And we have cases where people or prisoners are restrained to a bench or a chair or a board of some sort. But here, these were leg irons? Yes, sir. But not attached to any other object? That's correct. I think he testified that he was able to lay down, take a nap, move about a cell. He did take a shower, but with some difficulty. He was restricted to a cell anyway, so there wasn't a whole lot of... And it's also not like one of the cases where he was left in restraints in a cell with another prisoner, which could have resulted in some injury to him. But if there's no other questions, I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Middlebrooks. Mr. Weiss? Good morning, Your Honors. May it please the Court. So first, I would just say to Judge Kobes's point that the only argument the defendants advance in their brief is this inaction versus inaction distinction, which just doesn't have a basis in this Court's law. The characterization of Walker, for example, that Walker was solely about the handcuffing to a chair as opposed to keeping him there for 24 hours. Defendants argue in their brief that there was both a deliberate indifference claim about the length of time and there was an excessive force claim about the initial chaining. There's just no basis for that in Walker. It's clearly just an excessive force claim. Clearly, the duration is part of an excessive force claim. And as we collect a bunch of cases from around the country, inactions come up in uses of force all the time. Issues like restraints, tight handcuffs. In fact, another claim in Walker versus Bowersox is about pepper spraying. And as often the case in excessive force claims about pepper spraying, part of the force was the failure to decontaminate afterwards, which is to say the inaction of not contaminating is an aspect of the force. So the dispute between the magistrate judge and the district court judge, or the disagreement, was about the clearly established problem. I agree. What's the case I need to read to convince myself that this is clearly established? Because it is different factually, and how do I think about that? Right. I think to offer one prelude to that question, I would just say defendants are the appellant here. They filed an optional interlocutory appeal, and they didn't actually raise the argument. Did they raise the issue of clearly established? They raised the issue of clearly established, but only through this a failure to act cannot be a clearly established violation. So that's clearly wrong. The magistrate opinion is closer, and I think defendants have waived that argument. But I will answer, and I think the decision can be affirmed on that basis alone. But the magistrate opinion is closer, but the reason we think the district court got it right is by looking at the excessive force claim element by element, as opposed to doing sort of a totality of the circumstances looking at the opinions. And I'll get into that. We talk a little bit in our brief, and we have some discussion from a Justice Thomas dissent in Hudson v. McMillian, not for its authority, but just because it explains this really well, we think, is that excessive force claims are unusual in that they have an extremely high subjective standard and a quite low objective standard. And Justice Thomas was complaining about this and saying, well, you botched the subjective standard by making it too high, malicious and sadistic for the very purpose of causing harm. You know, that's an astronomical barrier to bringing claims. And you're doing an equilibrium by making the objective standard, which is just like more than a push de minimis, you're making that too low. So what the magistrate did is just sort of look at the totality of the circumstances. What the district court came closer to doing and why we think it reached the right result is going standard by standard on the subjective standard and then the objective standard. So defendants don't contest the subjective standard as met, which is the really hard part, malicious and sadistic for the very purpose of causing harm. What we have here is officers who threatened to hurt him, who said, when we get the opportunity, we're going to hurt you. Then they had the opportunity. They took it. They said, F you, they called in the N word. They said, we're going to leave you in these chains on pages 9 and 10 in the supplemental appendix. I don't know if you actually need to show this, but you see literal sworn testimony about sadism that the three of them seem to be having a really good time. Are those facts disputed? Those facts are disputed, but of course, they're resolved in our favor on summary judgment. And in fact, defendants' facts are not even, this court doesn't even have jurisdiction over defendants' facts because this is an interlocutory appeal on the pure question of law, of qualified immunity. So the subjective standard, defendants haven't contested that. Then we get to the objective standard. And the question is, do cases like Walker and Jackson v. Gutzmer clearly establish the objective standard? And we think that they do. So Jackson, for example, Jackson ruled for the defendant, but on the grounds of the subjective standard alone, that person was in restraint for three and a half hours. The district court ruled no qualified immunity. And this court overturned because the plaintiff couldn't meet the very high standard of malicious and sadistic for the very purpose of causing harm. Are you talking about Jackson? Yeah. Wasn't that a prisoner restrained on a restraint board? It was a more serious form of restraint, yeah. That's what really bothers me about this case because when I look at all these cases, they seem to all involve being shackled or chained or restrained to a chair, a board, a bench for a period of time, as opposed to leaving the leg irons on a prisoner for a period of time. And I know you think that the clearly established prong is not in play because I guess waiver or failure to argue it, but that's the part that really bothers me because I don't find a case that's similar to that, where it's similar to leg irons left on for a period of time. Right. I think that's a fair concern, that what we would just highlight is that we're at the low, that standard is just above de minimis. And what we have here are contested facts where he says, even at the beginning, they were excessively tight, that they caused him a serious amount of pain. Defendants obviously contest those facts. To Judge Cobes's point, when Sergeant Bivens comes in and sees what happens, he gets other staff and takes him to medical and documents it. A de minimis excessive force claim is referred to as a push. This wasn't treated like a push. He was prescribed a generic pain medication. This wasn't treated like a push. This was treated like he was actually hurt. And the defendant's point about injury, there's a Supreme Court 9-0 summary reversal that makes this totally clear, Wilkins v. Gatti. Injury is irrelevant, except in so much as it casts evidence on force. So the lower court in Wilkins had focused on injury, and Wilkins v. Gatti said, no, no, no, it's not de minimis injury, it's de minimis force. And injury can be evidence of force, but it's not necessary. And so what we have here is, I mean, there are disputed facts, you know, how swollen were his legs. He says he was in pain for 11 more days. Defendants dispute that. A fact finder may indeed find that persuasive. I'm not sure. But even if he was just in the pain that he testified to for those 18 hours, he doesn't need to show a subsequent injury. That's just not actually an aspect of the excessive force claim. And I guess that Mr. Evans would have some state law remedies here. That's possible, yes. I think like a battery or assault or, I don't know, maybe false. Maybe not quite false imprisonment, but that doesn't really, might not fit. But you see what I'm getting at. Not every violation of a right is a constitutional, makes a constitutional claim. That's true. I think I understand a reaction to these facts to say, even if he was in significant pain for a day, this is not a huge deal. Why make a huge case out of it? And, but the balance the Supreme Court has struck in, which is different from Fourth Amendment excessive force claims or Eighth Amendment deliberate indifference claims, is in the context of prison excessive force, they have said, we are going to need an incredibly high subjective standard. What is that standard? Maybe we're just going to say that. Malicious and sadistic for the very purpose of causing harm. And here that's met. And I don't think there's any question that it's, defendants don't contest that it's met. It was met in Walker, so it's certainly met here. And Walker, what were the facts in Walker? The Walker was, a prisoner was misbehaving, then he calmed down, then they handcuffed him to a chair and they kept him there for 24 hours. And they said, because it served absolutely no penological purpose. With no water, with no water. Oh, yeah, yeah, yeah. There was also stuff like- Access to a restroom. That's true. I would say, you know, in the only argument defendants present to this court, they would say, well, that's inaction and has nothing to do with anything. That's the only issue that they presented to the court. Again, what I would say is, even if it doesn't, if the objective prong doesn't quite meet up to Walker, none of these cases even find the objective prong contested. You know, that the sort of pain and the amount of force being used here is so plainly above de minimis and meeting the standard of malicious and sadistic is so high, that's the entire focus of these cases. We're in the unusual position where the malicious and sadistic standard is plainly met, and so we're talking about de minimis instead. And we think those cases establish that. Thank you, Mr. Weiss. Thank you very much, Your Honors. Mr. Middlebrooks. Yeah, sure. I just want to address a couple points that counsel for Mr. Evans, Mr. Weiss made. First, I think there are three elements of an excessive force claim. There is application of force done maliciously and sadistically, resulting in actual injury. So there are two other elements to an excessive force claim that were addressed in the brief as far as whether or not those were waived. I think that I brought up whether or not it was clearly established. I raised the element, I challenged both the objective elements in there, whether or not there was an application of force and whether or not he was actually injured, talking about the extent of his injuries. And so I don't think that any of those arguments have been waived. Do you concede that the subjective prong has been waived on appeal? I was never challenging that on appeal, Judge. I think that is a disputed fact and that gets resolved in Mr. Evans' favor. I was never trying to challenge that on appeal. And I just would say whether or not force was used or whether or not he had an injury, those are legal conclusions based on factual findings. The factual finding that he was left in a cell in leg restraints, that's a factual finding. And then whether or not that was an application of force is a legal conclusion. That's all I'd say, unless there's any other questions. I see none. Thank you, Your Honor. I appreciate you and your time. Thank you, Mr. Middlebrooks. The court appreciates both counsel's participation in argument before the court. It's been helpful. We'll continue to study the matter. Counsel may be excused.